UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: ANDRE CHREKY,<br>    Debtor. | Bankruptcy Case No. 10-268<br>Chapter 11 |
| RONNIE BARRETT,<br>    Appellant, |  |
| v. | Civil Action No. 10-1964 (RCL) |
| ANDRE CHREKY,<br>    Appellee. |  |

## MEMORANDUM OPINION

Before the Court is an appeal from the bankruptcy court. After conducting a hearing and making findings of fact, Bankruptcy Judge Teel ruled on two issues. First, he held that Andre Chreky and his wife, Serena Chreky, own money market accounts and certificates of deposit as tenants by the entireties. Second, he held that Mr. and Ms. Chreky may jointly be a member in a limited liability company, SPAC, LLC. Creditor Ronnie Barrett objected below to several of Mr. Chreky's claimed exemptions, and she now appeals the Bankruptcy Judge's rulings on these issues. Ms. Barrett has filed two other bankruptcy appeals on unrelated issues—in Civil Actions No. 10-1963 and 10-1965—which the Court will address in a separate opinion issued this same date.

In this case, the Court finds that the Bankruptcy Judge erred as a matter of law on both of the issues presented. Accordingly, the Court will reverse and remand this case for further proceedings consistent with this opinion.

1

## I. BACKGROUND

The Court has set forth in full the relevant facts about this entire bankruptcy case in its memorandum opinion issued this same date in Civil Actions No. 10-1963 and 10-1965. The Court will only include here the facts relevant to the issues presented in this appeal.

Andre and Serena Chreky have been married since 1987. (J.A. Tr. 8/6/10 208:1–5.) Since August 1996, Mr. Chreky has solely owned a salon in Washington, D.C., called Andre Chreky, Inc. (J.A. Tr. 9/27/10 ("Tr.") 107:8–10, 22–24.) He jointly operates the salon with Ms. Chreky. (Tr. 107:8–10.) Since September 1996, Mr. and Ms. Chreky have owned a limited liability company called SPAC, LLC, which they "formed for the purpose of acquiring and owning non-residential rental properties, specifically a property located at 1604 K Street Northwest, where Andre Chreky, Inc. operates its business." (Tr. 107:23–108:3.) Under the terms of SPAC, LLC, Ms. Chreky solely is a member with a 1% interest, and Mr. and Ms. Chreky jointly are a member with a 99% interest. (R. 85.)

Mr. and Ms. Chreky are both employees of Andre Chreky, Inc. As his salary, Mr. Chreky receives $520,000 per year plus tips. (R. 98.) Ms. Chreky receives $260,000 per year. (J.A. Tr. 8/6/10 135:8–10.) Their salaries have not changed in the past ten years. (J.A. Tr. 8/6/10 135:4–7.) Ms. Chreky deposits her bi-weekly paychecks into her personal, solely owned bank account at SunTrust Bank, and she pays the family bills from that account. (J.A. Tr. 8/6/10 214:15–19.) Mr. Chreky deposits his bi-weekly paychecks into a joint money market account at Adams National Bank. (R. 100–01.) The money market account is in the names of both Mr. and Ms. Chreky. (R. 201–03.) Mr. Chreky uses funds from this money market account to periodically purchase certificates of deposit ("CDs") in the names of Mr. and Ms. Chreky. (R. 68–83.) Those CDs mostly provide that they are multiple party accounts with rights of survivorship. (*Id.*) Mr.

2

Chreky has transferred money from the CDs into a Certificate of Deposit Account Registry Service ("CDARS") account, which is held in the names of both Mr. and Ms. Chreky. (J.A. Tr. 8/6/10 119:8–10; R. 57–59.)

Ms. Chreky has only made two deposits into the money market account. In April 2006, Andre Chreky, Inc. paid a bonus of $363,500 to Ms. Chreky, which netted $217,000 after taxes. (J.A. Tr. 9/24/10 35:17–21.) The check was made payable to Ms. Chreky, but Mr. Chreky endorsed it. (Tr. 115:1–2.) The check was deposited into the money market account. In April 2007, Andre Chreky, Inc. paid a bonus of $700,000 to Ms. Chreky, which netted $404,000 after taxes. (J.A. Tr. 9/24/10 36:4–12.) Ms. Chreky deposited that check into the money market account.

In September 2006, Andre Chreky, Inc. employee Jennifer Thong sued Mr. Chreky and Andre Chreky, Inc., claiming sexual assault, harassment, and retaliation. Also in September 2006, Andre Chreky, Inc. employee Ronnie Barrett notified Mr. Chreky that she planned to file a lawsuit against him. In February 2007, Ms. Barrett filed that lawsuit against Mr. Chreky and Andre Chreky, Inc., claiming sexual harassment and retaliation.

Following a jury trial, Ms. Barrett has a judgment against Mr. Chreky and Andre Chreky, Inc. for $2.3 million. Following a court-approved settlement, Ms. Thong has a judgment against Mr. Chreky and Andre Chreky, Inc. for $7 million. Ms. Barrett and Ms. Thong are the two primary creditors in Mr. Chreky's bankruptcy.

## II. STANDARD OF REVIEW

The Court reviews questions of law *de novo*. *Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 537 (D.D.C. 2008); *In re Johnson*, 236 B.R. 510, 518 (D.D.C. 1999).

The Court reviews a bankruptcy court's findings of fact under the clearly erroneous standard. Fed. R. Bankr. P. 8013 ("Findings of fact, whether based or oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). "The burden of proof is on the party that seeks to reverse the bankruptcy court's holding, and that party must show that the court's holding was clearly erroneous as to the assessment of the facts and not simply that another conclusion could have been reached." *Advantage Healthplan*, 391 B.R. at 537 (citations and quotations omitted). Under the clearly erroneous standard, a reviewing court may not "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty . . . if it undertakes to duplicate the role of the lower court." *Anderson v. Bessemer City*, 470 U.S. 564, 563 (1985); *Advantage Healthplan*, 391 B.R. at 537. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Advantage Healthplan*, 391 B.R. at 537. "To be clearly erroneous, a decision must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *In re Johnson*, 236 B.R. at 518 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

The Court reviews a bankruptcy court's evidentiary rulings under the abuse of discretion standard. *See Gen. Elec. Co. v. Joiner*, 522 136, 141 (1997) ("[A]buse of discretion is the proper standard of review of a district court's evidentiary rulings."); *Haarhuis v. Kunnan Enter., Ltd.*, 177 F.3d 1007, 1015 (D.C. Cir. 1999) (reviewing a bankruptcy court's evidentiary ruling under

the abuse of discretion standard). "[A]n abuse of discretion occurs when the [bankruptcy] court relies on clearly erroneous findings of fact, fails to consider a relevant factor, or applies the wrong legal standard." *Pigford v. Johanns*, 416 F.3d 12, 23 (D.C. Cir. 2005).

### III. DISCUSSION

#### A. The Bankruptcy Judge Erred in His Analysis of Whether the Money Market Account and Certificates of Deposit Were Held by Mr. and Ms. Chreky as Tenants by the Entireties.

The Bankruptcy Judge ruled that Andre Chreky and Serena Chreky hold the funds contained in their money market account and certificates of deposit as tenants by the entireties. (Tr. 106–19.) Ms. Barrett argues that Mr. and Ms. Chreky do not hold the funds as tenants by the entireties, and that only Mr. Chreky holds the funds. Mr. and Ms. Chreky argue that they hold all of the funds at issue as tenants by the entireties. The Court finds that the Bankruptcy Judge did not apply the proper legal standard to this issue, and thus will reverse and remand for further proceedings consistent with this opinion.

The District of Columbia recognizes that a married couple can hold property as tenants by the entireties. *Morrison v. Potter*, 764 A.2d 234, 236 (D.C. 2000). "The characteristics of a tenancy by the entireties are: a right of survivorship, an inability of one spouse to alienate his interest, and a broad immunity from claims by separate creditors." *Id.* "Although property subject to a tenancy by the entireties is liable for the spouses' joint debts and for the individual debts of the surviving co-tenant, it is unreachable by creditors of one but not of both of the tenants." *Id.* at 236–37. Thus, if Mr. and Ms. Chreky hold property as tenants by the entireties, then creditors of only Mr. Chreky will not be able to reach that property to satisfy their claims.

### 1. *The Bankruptcy Judge Erred in Part in His Analysis of the Proper Legal Standard and Burdens of Proof.*

Ms. Barrett argues that the Bankruptcy Judge did not apply the proper legal standard in making his findings and conclusions. The parties disagree over the effect of several presumptions in District of Columbia law that govern whether an asset is a tenancy by the entireties, as well as the proper burdens of proof in establishing these presumptions. Because this is a question of law, the Court will review it *de novo*.

There are two applicable presumptions in the District: the *Imirie* presumption and the *Settle* presumption. *See Imirie v. Imirie*, 246 F.2d 652 (D.C. Cir. 1957); *Settle v. Settle*, 8 F.2d 911 (D.C. Cir. 1925). Later D.C. Court of Appeals cases have clarified these presumptions. The *Imirie* presumption provides: "[J]oint bank accounts are presumed to be for the convenience of the party making deposits to the account and . . . absent a showing of donative intent on the part of the party making the deposit, the nondepositing party does not have a property interest in the account." *Roberts & Lloyd, Inc. v. Zyblut*, 691 A.2d 635, 639 (D.C. 1997) (citing *Imirie*, 246 F.2d at 653).[1] The logical prerequisite to the *Imirie* presumption is a finding that only one person is making deposits to the account—that is, that the account is a sole-depositor account. The *Settle* presumption provides: "[P]roperty conveyed to married persons as joint tenants is presumed to be held as tenants by the entireties."[2] *Zyblut*, 691 A.2d at 639. A prerequisite to the *Settle* presumption, however, is a "finding that the account was intended to be held jointly." *Morrison*,

---

[1] There is a "limited exception" to the *Imirie* presumption that "an account agreement providing that the account is to be held as a joint tenancy is conclusive as between the named account holders on the one hand and the financial institution holding the account on the other, the account agreement is not dispositive of the rights of the account holders with respect to each other, even where the account holders are married." *Zyblut*, 691 A.2d at 639. Because the issue here involves the rights of the account holders with respect to each other—not between the account holders and the bank—this exception does not apply. Thus, the account agreement is not dispositive of this issue.

[2] Based on the facts of the *Zyblut* case, it is clear that this presumption does not apply only to conveyances of property to married persons; rather, it is a presumption that all property jointly held by married persons is held as tenants by the entireties.

764 A.2d at 237 n.2; *Zyblut*, 691 A.2d at 640. Thus, "this jurisdiction essentially employs a presumption that property, including bank accounts, held by a husband and wife as joint tenants is held by the entireties, unless proof of a contrary intent leads to a different result." *Morrison*, 764 A.2d at 237.

These presumptions are consistent with each other, as the Court can infer from the *Zyblut* court's analysis. The *Zyblut* analysis indicates that a court should follow the following steps in deciding whether and how to apply the *Imirie* and *Settle* presumptions. First, the party seeking to invoke the *Imirie* presumption has the burden of fulfilling the *Imirie* prerequisite by proving that the account is a sole-depositor account.[3] Second, once the *Imirie* prerequisite is fulfilled, then there is a presumption that the joint bank account belongs solely to the person making deposits to the account. Third, a party can rebut the *Imirie* presumption by proving donative intent on the part of the person making the deposit. The rebutting party has the burden of proof. If the joint bank account is the depositor's business bank account, then the burden of proof is clear and convincing evidence and requires "careful judicial scrutiny of the impact of the transaction" to avoid "fraud and injustice." *See Imirie*, 246 F.2d at 653. If the joint bank account is the depositor's personal bank account, then the burden of proof is clear and convincing evidence, but does not require the same level of "careful judicial scrutiny." *See id.* (Claims to personal accounts "may perhaps be viewed with a more favorable eye."). Fourth, the party seeking to invoke the *Settle* presumption has the burden of fulfilling the *Settle* prerequisite, by proving that the account was intended to be held jointly. A finding of donative intent can fulfill this prerequisite. *See Zyblut*, 691 A.2d at 640. Fifth, once the *Settle* prerequisite is fulfilled, then there is a presumption that joint property held by married persons is held as tenants by the entireties.

---

[3] The Court assumes that the burden of proof in all of these instances—except as otherwise stated—is a preponderance of the evidence standard. This is the default rule in civil cases, and the Court is not aware of any contrary authority that would alter this standard.

Sixth, a party may rebut the *Settle* presumption using factors such as the ones set out by the *Zyblut* court. *See id.* at 640 n.7. The rebutting party has the burden of proof. Seventh, if the tenancy by the entireties was established by a conveyance or assignment (but not if it was always a tenancy by the entireties), then a party may rebut the *Settle* presumption by showing, by clear and convincing evidence, that the conveyance or assignment was fraudulent. *Id.* at 640–41. The rebutting party has the burden of proof.

Mr. and Ms. Chreky note the burden of proof set forth in Federal Rule of Bankruptcy Procedure 4003(c): "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." Here, this burden parallels the *Imirie* prerequisite burden. Thus, a creditor challenging a debtor's claimed exemptions has the burden of proving that the debtor did not properly claim the exemption, which is the same as proving that the account is a sole-depositor account. Then, as explained above, the *Imirie* presumption arises, and the burden shifts to the rebutting party to prove donative intent—that is, intent to hold the account jointly.

The Bankruptcy Judge applied some, but not all, of these presumptions and burdens of proof properly. The Court will address them in the sequence set out above.

### 2. *The Bankruptcy Judge Erred in His Consideration of the Sole-Depositor Account Issue.*

Ms. Barrett has the burden of satisfying the *Imirie* prerequisite, by proving that the account is a sole-depositor account. This requires a showing that only one of the accountholders actually made deposits to the account. The Bankruptcy Judge found that "Ms. Chreky made deposits of her own funds into the joint accounts." (Tr. 114:22–23.) Because this is a finding of fact, the Court will review it under the clearly erroneous standard. Evidence at the hearing showed that Ms. Chreky deposited two bonus checks into the account. She deposited $217,000 in

8

April 2006, and $700,000 in April 2007. (J.A. Tr. 9/24/10 35:17–21, 36:4–12.) Based on the evidence admitted at trial, the Court cannot find that this finding was clearly erroneous.

But the evidence admitted at trial was not all the evidence. Ms. Barrett has alleged that Ms. Chreky's deposits were fraudulent conveyances, so Ms. Chreky's deposits should not be considered as valid deposits. Ms. Barrett argues that the Bankruptcy Judge should have permitted her to introduce evidence in support of her argument that these were fraudulent conveyances. Because this is an evidentiary issue, the Court reviews it for abuse of discretion. The Bankruptcy Judge held that the parties would argue the issue of fraudulent conveyances at a future hearing: "The parties have agreed that the issue of whether there have been any fraudulent conveyances [is] to be reserved for later determination. . . . [T]o the extent that there was any fraudulent conveyance into the joint account or out of the joint account, the stipulation that the issue of fraudulent conveyances is to be addressed later protects that right." (Tr. 115:22–116:6.) The question of whether these deposits were fraudulent, however, bears directly on the question of whether the account is a sole-depositor account. Ms. Barrett had the burden of showing that the account was a sole-depositor account, and her primary way of doing so was by proving that Ms. Chreky's deposits were fraudulent. By ruling on the sole-depositor account issue without considering the possibility that these deposits were fraudulent, the Bankruptcy Judge failed to consider a relevant factor. "[A]n abuse of discretion occurs when the [bankruptcy] court . . . fails to consider a relevant factor." *Pigford*, 416 F.3d at 23. Because a determination of the sole-depositor account issue necessarily requires consideration of whether the deposits were fraudulent, the Bankruptcy Judge abused his discretion by ruling on the sole-depositor account issue before considering evidence of whether the deposits were fraudulent.

The Court pauses to note that the Bankruptcy Judge "overrule[d] the objections to the exemptions without prejudice to whatever fraudulent conveyance claims the Creditors Thong and Barrett have." (Tr. 119:6–9.) Thus, the Bankruptcy Judge could reverse his own ruling at a later point after hearing evidence about the alleged fraudulent conveyances. Despite this possibility, the Court feels constrained to reverse on this issue and set forth a framework to guide the Bankruptcy Judge on remand.

### 3. The Bankruptcy Judge Erred in His Consideration of the Donative Intent Issue.

Assuming, *arguendo*, that on remand, Ms. Barrett can meet her burden of showing that the account was a sole-depositor account, then the *Imirie* presumption arises, and the burden shifts to Mr. Chreky to rebut the presumption. Mr. Chreky then has to prove donative intent by clear and convincing evidence. Because this was a personal account—not a business account—the Bankruptcy Judge would not have to apply the careful judicial scrutiny required for a business account under *Imirie*. Ms. Barrett argues that the Bankruptcy Judge erred by placing the burden of rebutting the *Imirie* presumption on her, instead of on Mr. Chreky. Because this is a question of law, the Court will review it *de novo*.

The Bankruptcy Judge held that the burden of proof was on the creditor, not the debtor, and that the creditor failed to carry her burden. (Tr. 113:19–114:7.) In so doing, the Court pointed to a footnote in *Zyblut*, (Tr. 110:3–12,) which contains the citation: "*But see Edstrom v. Kuder*, 351 A.2d 506, 509 n.7 (D.C. 1976) (suggesting that similar rule should apply to jointly held stock certificates, but noting that burden of proof should be on party attacking joint tenancy)." *Zyblut*, 691 A.2d at 639 n.5. But the cited footnote in *Edstrom* makes clear that the burden of proof shifts to the party attacking the joint tenancy *only* in cases involving stock certificates. *Edstrom*, 351 A.2d at 509 n.7. In cases involving joint bank accounts, the *Imirie*

10

presumption still applies, and the burden of proof is on the person seeking to rebut the presumption by proving joint tenancy—not on the person attacking joint tenancy. *Id.*

The Bankruptcy Judge further held that "certificates of deposit are securities governed by Article 8 of the Uniform Commercial Code and are not a bank account." (Tr. 109: 22–24.) The effect of this holding was that it shifted the burden of proof onto Ms. Barrett under *Edstrom*, 351 A.2d at 509 n.7. Ms. Barrett argues that a certificate of deposit is not a security. Because this is a question of law, the Court will review it *de novo*.

The Supreme Court has expressly decided this issue. It has held that a certificate of deposit purchased from a federally regulated bank is not a security. *Marine Bank v. Weaver*, 455 U.S. 551, 558–59 (1982). Accordingly, the certificate of deposit in this case—held at Adams National Bank—is not a security. Thus, the law governing bank accounts—not the law governing securities and stock certificates—applies to certificates of deposits. The *Imirie* presumption and framework apply to certificates of deposit, and thus to every type of account at issue in this case. The Bankruptcy Judge erred by placing the burden of proof on Ms. Barrett.

### 4. *The Bankruptcy Judge Did Not Reach the* **Settle** *Presumption Issue.*

Because the Bankruptcy Judge erred by placing the burden of proof on Ms. Barrett to rebut the *Imirie* presumption, the donative intent finding cannot fulfill the *Settle* prerequisite and create the *Settle* presumption. Further, the Bankruptcy Judge did not reach the issue of the *Settle* presumption in his analysis. Thus, this Court will not reach the issue either.

In sum, the Bankruptcy Judge erred in part in his analysis of the applicable legal standard and burdens of proof. To the extent that the Bankruptcy Judge's rulings are inconsistent with this Court's rulings, the Court will reverse on those rulings. Based on the record at the hearings, the Bankruptcy Judge's finding that the money market account was a sole-depositor account was not

clearly erroneous. But because the Bankruptcy Judge failed to consider a relevant factor when making this finding, he abused his discretion. Further, the Bankruptcy Judge improperly placed the burden of proof on Ms. Barrett to rebut the *Imirie* presumption. The Bankruptcy Judge did not reach the *Settle* presumption, so this Court does not either. The Court will remand for further proceedings consistent with this opinion.

### B. The Bankruptcy Judge Erred in His Analysis of Whether District of Columbia Law Permits a Husband and Wife to Be a Member of a Limited Liability Company.

The Bankruptcy Judge held that a married couple may be a person or entity that owns an interest in a limited liability company. (Tr. 108–09.) Ms. Barrett argues that D.C. case law provides that a married couple cannot be considered as one person or entity, but rather must be considered as two separate people. Because this is a question of law, the Court will review it *de novo*.

Under D.C. law, a "limited liability company" ("LLC") is "an entity that is an unincorporated association, having perpetual duration, having one or more members that is organized and existing under this chapter [of the D.C. Code]." D.C. Code § 29-1001(16.) A "member" is "a *person* that owns an interest in a limited liability company." D.C. Code § 29-1001(19) (emphasis added). A "person" is "a natural person (age 18 or older), partnership (whether general or limited and whether domestic or foreign), limited liability company, trust, estate, association, corporation, custodian, nominee, *or any other individual or entity in its own or any representative capacity*." D.C. Code § 29-1001(22) (emphasis added). The statute does not expressly state whether a married couple may be a member of an LLC, but Mr. Chreky argues that the couple is an "entity" under the statute. The Court disagrees.

12

D.C. case law has clarified that a married couple consists of two people, not one person. At common law, there was a "fiction" that a "husband and wife were one person." *Johnson v. United States*, 157 F.2d 209, 209 (D.C. 1946). Subsequent to common law, however, "[a]cts of Congress have established the separation of husband and wife as to property, contracts, and torts in the District of Columbia. . . . [T]his legislation has made the fiction obsolete." *Id.* (holding that a man and woman can conspire with each other to commit a crime, as they are two separate people). Subsequent D.C. case law has also recognized both this common law rule and the legislation overruling the common law. The court in *In re Wall's Estate* held: "The tenancy by entireties . . . is essentially a joint tenancy, modified by the common-law theory that husband and wife are one person." *In re Wall's Estate*, 440 F.2d 215, 217 & n.8 (D.C. 1971) (citing *Settle*, 8 F.2d at 911; *Fairclaw v. Forrest*, 130 F.2d 829, 832 (D.C. 1942) ("Next to primogeniture, unity of husband and wife was perhaps the common law's most characteristic institution. Tenancy by entirety epitomized the idea.")). But it then recognized that the common law has been overruled: "[T]he common law concept of marital unity has been abolished legislatively." *Wall's Estate*, 440 F.2d at 217–18 & n.9 (citing to a series of statutes commencing with the Married Women's Property Act). The most recent D.C. case to address this issue, *Morrison v. Potter*, did not expressly recognize that the common law was overruled. The *Morrison* court held that the District of Columbia recognizes the concept of tenancy by the entireties "with most of its common law features still intact," and reiterated the holding that "[a] tenancy by the entireties is essentially a joint tenancy, modified by the common-law theory that husband and wife are one person." *Morrison*, 764 A.2d at 236. But in so holding, the court cited to *Wall's Estate*, indicating that the *Wall's Estate* holding was still good law. Thus, according to D.C. case law, although a married couple was a "person" under the common law, subsequent legislation

abolished this common law rule, so that a married couple now consists of two people. Contrary to the Bankruptcy Judge's holding, a married couple is neither an individual nor an entity that may be a member in an LLC. Mr. and Ms. Chreky's membership in SPAC, LLC, is thus not permitted under the law.

Although a married couple may not be a "member" in an LLC, a married person can hold his individual membership in the LLC as a tenancy by the entireties with his spouse. "A membership interest in a limited liability company is personal property." D.C. Code § 29-1033. Thus, for example, if Mr. Chreky were a member of an LLC, he could hold that membership interest as a tenant by the entireties with Ms. Chreky, even though Ms. Chreky was not a member.

The Bankruptcy Judge has not yet considered the issue of who is properly a member of SPAC, LLC, nor whether that person holds his membership as a tenant by the entireties with his spouse. The Court will accordingly reverse the Bankruptcy Judge on the legal issue, and remand to the Bankruptcy Judge for findings of who actually holds the membership interest currently being held in name by Mr. and Ms. Chreky, and for findings of whether that person holds the membership as a tenant by the entireties.

## IV. CONCLUSION

Accordingly, for the reasons stated, in Civil Action No. 10-1964, the Court will reverse and remand the judgment of the bankruptcy court for further proceedings consistent with this opinion.

A separate order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on May 2, 2011.